**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: BARBARA ANN LENGYEL, Debtor | |
| BARBARA ANN LENGYEL  Plaintiff,  v.  CHASE HOME FINANCE LLC, CITI RESIDENTIAL LENDING, INC.,  Defendants. | CIVIL ACTION NO. 3:CV-13-2821  BANKR. NO. 5:07-BK-52691  ADV. NO. 5:13-AP-0100  (JUDGE CAPUTO) |

## **MEMORANDUM**

Presently before the Court is the Motion to Dismiss Plaintiff Barbara Ann Lengyel's ("Lengyel") Amended Complaint (Doc. 15) filed by Defendant Citi Residential Lending, Inc. ("Citi"). Because the face of the Amended Complaint demonstrates that Lengyel failed to timely file her claims against Citi, the motion to dismiss will be granted.

### **I. Background**

**A.   Factual Background**

The facts as set forth in the Amended Complaint are as follows:

On or about June 17, 2005, Lengyel executed an adjustable rate note (the "loan") and a mortgage in favor of Ameriquest Mortgage Company. (*Am. Compl.*, ¶ 7.) Lengyel fell behind on the mortgage payments, and on September 10, 2007, a mortgage foreclosure action was filed. (*Id*. at ¶ 8.)

On October 17, 2007, Lengyel filed a Chapter 13 Bankruptcy petition. (*Id*. at ¶ 9.) She proposed a Chapter 13 plan pursuant to which the Chapter 13 trustee would pay all amounts that came due on the loan through November 2007. (*Id*.) These payments would

have cured the arrears on the loan . (*Id.*)  The plan also provided that Lengyel would maintain regular payments beginning with the payment that came due in December 2007. (*Id.*) Lengyel also filed a motion that was granted by the Court which required her employer to withhold from her pay the payments she was obligated to make on the loan and to the Chapter 13 trustee. (*Id.* at ¶ 10.)

On the date the bankruptcy petition was filed, Citi serviced the loan.  Citi had notice of the bankruptcy petition by no later than November 1, 2007, the date it caused to be filed Proof of Claim 2 (the "Proof of Claim"). (*Id.* at ¶ 11.)

Although Lengyel's mortgage payments were eventually made by a wage attachment order, she was aware that there would be some delay until this order was entered and implemented by her employer. (*Id.* at ¶ 12.)  As such, Lengyel made two partial payments directly to Citi to ensure that her mortage remained current. (*Id.*)

The first post-petition payment that she made was for $468.31 and was received by Citi on November 5, 2007. (*Id.* at ¶ 13.)  This payment was appropriately credited by Citi. (*Id.*)

The second post-petition payment made by Lengyel was for $1,067.60, and it was received by Citi on or about November 13, 2007. (*Id.* at ¶¶ 14-15.) Nevertheless, "for years" the servicer of the mortgage denied that this second post-petition payment was ever made (the "missing payment"). (*Id.* at ¶ 16.)  The failure to give Lengyel credit for this payment contributed to the Defendants' belief that the mortgage was not current. (*Id.* at ¶ 17.)  Thus, Citi denied that it received the second payment. (*Id.* at ¶ 18.)  And, after the mortgage was transferred to Chase Home Finance, LLC ("Chase"), Chase also denied that the second payment had ever been made. (*Id.*)

Lengyel's proposed bankruptcy plan was confirmed on January 9, 2008. (*Id.* at ¶ 20.) The next day, Citi indicated by facsimile through its counsel to Lengyel that she was sixty

days or more delinquent on the post-petition mortgage payments. (*Id*. at ¶ 21.) That facsimile also requested Lengyel's concurrence with a motion for relief from the automatic stay. (*Id*.) In fact, however, Lengyel was only ten days behind on her mortgage when that communication was sent. (*Id*. at ¶ 23.)

Lengyel's counsel contacted Citi's attorney and explained that the payments should have been made pursuant to the wage attachment order. (*Id*. at ¶ 24.) Lengyel's counsel further explained that under the terms of the mortgage as modified by the confirmed bankruptcy plan, it would have been impossible for Lengyel to have been sixty days delinquent on the mortgage. (*Id*.)

Citi's counsel also sent a facsimile on April 17, 2008. (*Id*. at ¶ 26.) That facsimile falsely stated that the mortgage was due for February 2008, when, in fact, the loan was current. (*Id*. at ¶ 27.) Similarly, on June 10, 2008, Citi's counsel sent a facsimile indicating that the loan remained outstanding for the months of April through June 2008. (*Id*. at ¶¶ 29-30.) Again, however, the loan was current as of that date. (*Id*. at ¶ 30.) The June 10, 2008 facsimile also indicated that $362.46 in late charges were owed. (*Id*. at ¶ 31.)

On June 11, 2008, Lengyel's counsel contacted Citi's bankruptcy counsel and obtained a post-petition payment history. (*Id*. at ¶ 32.) The history failed to include the missing payment. (*Id*.) The history also did not include two payments that had been received from Lengyel's employer on March 28, 2008 and April 7, 2008. (*Id*.) Lengyel's counsel subsequently obtained documentation from Lengyel's employer that the checks sent to Citi in March and April 2008 had been cashed. (*Id*. at ¶ 33.) After being provided with such documentation, Citi applied those payments to Lengyel's account. (*Id*.)

"No later than March 6, 2009, the loan was transferred to Chase." (*Id*. at ¶ 34.) On March 6, 2009, a notice of the transfer of the claim was filed in Lengyel's bankruptcy case, and, as a result, Chase became the holder of the interest identified on the Proof of Claim

Form, at the latest, on March 6, 2009. (*Id*. at ¶¶ 35-36.)

On June 16, 2009, Chase retroactively increased the mortgage payment, which it indicated would take effect on May 1, 2009. (*Id*. at ¶ 37.)  The confirmed bankruptcy plan, however, required Chase to send any notice of payment change to Lengyel and her counsel within ten days of any change to the payment. (*Id*. at ¶ 39.)

On July 2, 2009, Chase's counsel sent a facsimile to Lengyel falsely stating that the loan was delinquent from November 2008 through June 2009. (*Id*. at ¶ 41.)  That facsimile also sought Lengyel's concurrence with a motion for relief from the automatic stay. (*Id*. at ¶ 42.)

On November 9, 2009, Chase's counsel sent a facsimile falsely stating that the loan was delinquent for over a year, from November 2008 through November 2009. (*Id*. at ¶¶ 43-44.)  The November 9, 2009 facsimile also proposed that Lengyel agree to a stipulation in lieu of motion for relief from the automatic stay. (*Id*. at ¶ 45.)  The stipulation would have required Lengyel to agree to pay over $12,000 of arrears that she did not owe at the rate of over $2,000 per month. (*Id*.)

On June 10, 2010, Chase provided a new post-petition payment history which failed to include three payments Chase had previously acknowledged that it had received. (*Id*. at ¶ 46.)

On June 28, 2010, Chase returned a payment that it had received from Lengyel's employer. (*Id*. at ¶¶ 47-48.)   The payment was returned for the reason that "funds insufficient to cure default Chase does not accept personal checks for Foreclosure." (*Id*.) But, when Chase returned the payment, the account was post-petition current. (*Id*. at ¶ 49.)

Effective July 19, 2010, Chase posted to the escrow account for the loan a $1,270.20 charge that was for 2007 real estate taxes owed by Lengyel. (*Id*. at ¶ 50.)  The confirmed bankruptcy plan provided for the taxes to be paid by the trustee. (*Id*. at ¶ 51.)

On August 19, 2010, Lengyel's employer contacted her counsel and advised that Chase had not deposited four checks that had been sent for the mortgage. (*Id*. at ¶ 52.) Although the checks were sent to the address on the Notice of Transfer of Claim, Chase insisted that the payments had not been received and that the checks were sent to the wrong address for payments. (*Id*. at ¶ 53.)

The confirmed bankruptcy plan provides:

> No other fees, costs or amounts incurred by the creditor or its servicer during this chapter 13 case and asserted to be due on the Debtor's mortgage account may be collected or charged to the Debtors during the case or after entry of discharge except as permitted by this plan, and no payments received by the creditor or its servicer from the Debtors or the Trustee shall be applied and credited except as directed and required by this plan.

(*Id*. at ¶ 55.) Chase, however, improperly attempted to collect from and charge to Lengyel amounts that had been advanced to pay the taxes. (*Id*. at ¶ 58.)

Lengyel alleges that Defendants failed to credit payments directed and required by the plan, including the insistence for a period of years that the missing payment had not been received. (*Id*. at ¶ 59.) Although both Citi and Chase provided post-petition payment histories to Lengyel, the missing payment never appeared on any history until it was finally disclosed on a document received by Lengyel's counsel in May 2012. (*Id*. at ¶ 19.) As a result, Lengyel alleges that she has suffered actual damages, including out-of-pocket monetary loss, emotional distress, and liability to pay attorney's fees. (*Id*. at ¶ 54.)

**B.    Procedural History**

On April 23, 2013, Lengyel filed an Adversary Complaint against Citi and Chase in Bankruptcy Case 07-52691. (Doc. 1, Ex. A.) The Bankruptcy Court declined to exercise jurisdiction over certain counts of the Adversary Complaint and Lengyel was afforded an opportunity to file a motion to withdraw the reference as to certain non-bankruptcy specific counts. (Doc. 1, ¶ 7.) On November 18, 2013, Lengyel, with the concurrence of Citi and Chase, filed the Motion to Withdraw the Reference. (Doc. 1.)

The Motion to Withdraw the Reference was granted, and Lengyel was directed to file an amended complaint consisting of those allegations and claims that are to proceed in this action. (Doc. 4.)

On December 26, 2013, Lengyel filed her Amended Complaint. The Amended Complaint consists of three counts. In Count 1 of the Amended Complaint, Lengyel asserts a claim against Citi and Chase for violations of the Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Stat. Ann. § 2270.1 *et seq*. (*Am. Compl.*, ¶¶ 60-70.) Count 2 of the Amended Complaint alleges Chase violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*. (*Am. Compl.*, ¶¶ 71-84.) And, Count 3 of the Amended Complaint seeks attorneys' fees under the FCEUA and RESPA from Citi and Chase. (*Am. Compl.*, ¶¶ 85-87.)

On January 23, 2014, Chase filed its Answer and Affirmative Defenses to Plaintiff's Amended Complaint. (Doc. 14.) The same day, Citi filed the instant motion to dismiss the Amended Complaint. (Doc. 15.) Citi filed its brief in support of the motion to dismiss on February 6, 2014. (Doc. 17.) On February 24, 2014, Lengyel filed a brief in opposition to the motion to dismiss (Doc. 18), and, on March 10, 2014, Citi filed a reply brief in further support of its motion. (Doc. 19.) As the motion to dismiss was thus fully briefed, Lengyel requested oral argument pursuant to Middle District of Pennsylvania Local Rule 7.9. (Doc. 21.) Oral argument was held on May 7, 2014. The motion to dismiss is now ripe for disposition.

## II. Discussion

### A.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to

determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the

complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d at 1196. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

**B.    The FCEUA**

The FCEUA, 73 Pa. Stat. Ann. § 2270.1 *et seq.*, prohibits "unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts." *Id*. at § 2270.2. Under the statute, a "consumer" is defined as "[a] natural person residing in this Commonwealth who owes or is alleged to owe a debt or one who has incurred or is

alleged to have incurred liability for the debt within this Commonwealth," and a "creditor" is "[a] person, including agents, servants or employees conducting business under the name of a creditor and within this Commonwealth, to whom a debt is owed or alleged to be owed." *Id*. at § 2270.3. The FCEUA defines a "debt," in part, as:

> An actual or alleged past due obligation, claim, demand, note or other similar liability of a consumer to pay money, arising out of a single account as a result of a purchase, lease or loan of goods, services or real or personal property for personal, family or household purposes or as a result of a loan of money or extension of credit which is obtained primarily for personal, family or household purposes, provided, however, that money which is owed or alleged to be owed as a result of a loan secured by a purchase money mortgage on real estate shall not be included within the definition of debt.

*Id*.

Section 2270.4, sets forth a number of debt collection activities of creditors which constitute unfair or deceptive debt collection acts or practices under the FCEUA. *See* 73 Pa. Stat. Ann. § 2270.4. Here, Lengyel contends Citi violated two subsection of § 2270.4. First, Lengyel asserts that § 2270.4(b)(5)(ii) was violated as a result of the "false representation of the character, amount or legal status of any debt." *Id*. at § 2270.4(b)(5)(ii). Second, Citi is alleged to have violated § 2270.4(b)(5)(x) based on the use of a "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id*. at § 2270.4(b)(5)(x).[1] Additionally, Lengyel argues that, based on the violations of § 2270.4, Citi also violated the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201-1 *et seq*. *See* 73 Pa. Stat. Ann. § 2270.5 ("If a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the act of December 17, 1968 (P.L.

---

[1] Lengyel also asserts that "Each Defendant" violated § 2270.4(b)(vi) "by falsely representing and implying that when North Pocono School District sold the Taxes to the holder of the Loan, that Plaintiff lost a defense to the payment of the debt." (*Am. Compl.*, ¶ 67.) However, the Amended Complaint does not describe any action taken by Citi with respect to the payment of these taxes.

1224, No. 387), known as the Unfair Trade Practices and Consumer Protection Law.").

The statute of limitations for a claim based on the violation of the FCEUA is two years. *See* 73 Pa. Stat. Ann. § 2270.5(b). Specifically, the statute provides that "[a]n action to enforce any liability created by this act may be brought in any court of competent jurisdiction in this Commonwealth within two years from the date on which the violation occurs." *Id*.

In seeking dismissal of the Amended Complaint, Citi argues: (1) the FCEUA claim is barred by the statute of limitations; (2) Lengyel fails to set forth facts which state a claim under the FCEUA; (3) Lengyel does not state a claim under the Unfair Trade Practices and Consumer Protection Law; and (4) there is no basis to award attorneys' fees to Lengyel because she fails to state a claim. (Doc. 17.) Because the FCEUA claim is barred by the statute of limitations based on the face of the Amended Complaint, I will address only Citi's first and fourth arguments.

With respect to the timeliness of Lengyel's claims, Citi argues that the Amended Complaint asserts that the loan was transferred to Chase on March 6, 2009, and, as a result, "any violation that Plaintiff could conceivably allege with respect to the Loan and the related payments under the FCEUA would have necessarily occurred prior to Citi's transfer of the Loan" on that day. (Doc. 17, 7.) But, as the Adversary Complaint was not filed until April 23, 2013, Citi argues that the two-year statute of limitations bars the claims in this action.

In opposition, Lengyel contends that it would be premature to resolve Citi's statute of limitations defense on a motion to dismiss in this case. According to Lengyel,

> the mere fact that the Loan was transferred from Citi to Chase alone is insufficient to determine that the cause of action has not been brought within the statute of limitations. Lengyel did not specify when the violations occurred, so it would be impossible for the Court to determine on the face of the complaint that the time alleged in the complaint show that the claim was untimely. There is also nothing in the complaint that necessarily limits Citi's

> liability as of the date that it transferred the loan. Discovery has not yet begun, and Lengyel has no way to know what involvement Citi may have had in the servicing of the Loan after the sale date.

(Doc. 18, 5-6.) Lengyel further argues that even if Citi's alleged violations of the FCEUA occurred outside of the limitations period, the limitations period was nevertheless tolled by the discovery rule and/or the fraudulent concealment doctrine.[2]

Generally, under the Federal Rules of Civil Procedure, affirmative defenses, such as a statute of limitations defense, should be raised by way of answer to the complaint. *See* Fed. R. Civ. P. 8(c); *see also Robinson v. Johnson*, 313 F.3d 128, 134 (3d Cir. 2002) ("a limitations defense must be raised in the answer, since Rule 12(b) does not permit it to be raised by motion"). Nevertheless, the law of this Circuit "permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only 'if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Id*. (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)). The bar, however, must be apparent on the face of the complaint, otherwise the statute of limitations may not afford the basis for dismissal of a complaint under Rule 12(b)(6). *See id*. (citing *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir.1978)).

Based on the allegations in the Amended Complaint, Lengyel's FCEUA claim is barred by the statute of limitations. In particular, the final allegation as to Citi's involvement with respect to the events relevant to the instant claims relates to its transfer of the loan to

---

[2]    While Lengyel indicates that the discovery rule tolls the statute of limitations in this case, her submission relies on the fraudulent concealment doctrine. Although similar, the discovery rule and the fraudulent concealment doctrine are distinct rules under Pennsylvania law. *See Fine v. Checcio*, 870 A.2d 850, 858, 860 (Pa. 2005). The discovery rule acts to toll the accrual of the statute of limitations during the time in which the plaintiff is unable through reasonable diligence to discover the injury and its cause. Conversely, the fraudulent concealment doctrine tolls the running of the statute of limitations due to a defendant's concealing conduct. *See id*. I will consider both of these doctrines in resolving the instant motion to dismiss.

Chase on March 6, 2009. While Lengyel argues that it is unknown what involvement (if any) Citi had with respect to the loan after it was transferred, the face of the Amended Complaint does not allege that Citi took any action with respect to the loan, or that it even communicated with Lengyel, her counsel, or Chase about the loan or the missing payment, after March 6, 2009. Moreover, Lengyel's allegation that Citi and Chase "for years . . . denied that this second post-petition payment was ever made," (*Am. Compl.*, ¶ 16), does not prevent a finding that the face of the Amended Complaint demonstrates that the claim is untimely. Indeed, the Amended Complaint is devoid of allegations that Citi denied that the missing payment was made after the loan was transferred to Chase. As a result, the allegations in the Amended Complaint indicate that Citi's involvement with the events relevant to Lengyel's claim ceased as of March 2009.[3] Accordingly, Lengyel's statement of the claim as set forth in the Amended Complaint shows that the FCEUA cause of action was not timely filed against Citi within the applicable two-year statute of limitations.

Nevertheless, as noted, Lengyel contends that even if her claim was not timely filed, the discovery rule tolled the limitations period. Under the discovery rule, "even if a plaintiff suffers an injury, the statute of limitations does not begin to run until 'the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct.'" *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006).

---

[3] Lengyel also argues that because she "did not specify when the violations occurred, . . . it would be impossible for the Court to determine" the timeliness of the claim from the face of the Amended Complaint. (Doc. 18, 5.) Lengyel's argument is not convincing. For one, an allegation as to the date Lengyel believes Citi violated the FCEUA is simply a legal conclusion which can be disregarded in resolving a motion to dismiss. More important, however, is that the Amended Complaint contains numerous factual allegations as to Citi's actions, as well as the date of those actions, with respect to the purported violations of the FCEUA. Therefore, whether Lengyel's FCEUA claim was untimely filed can, in fact, be determined from the face of the Amended Complaint.

(quoting *Debiec v. Cabot Corp.*, 352 F.3d 117, 129 (3d Cir. 2003)). Restated, the limitations period commences upon the plaintiff's "actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause." *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011). Thus, "the discovery rule focuses not on 'the plaintiff's actual knowledge, but rather on 'whether the knowledge was known, or through the exercise of diligence, knowable to' the plaintiff." *Mest*, 449 F.3d at 511 (quoting *Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir. 1991)).

Based on the allegations in the Amended Complaint, the discovery rule does not afford Lengyel relief from the statute of limitations. In particular, Lengyel was aware that she made the missing payment to Citi in November 2007 and that Citi denied receiving such payment at that time. Lengyel, however, argues that the discovery rule applies because it was not until May 2012 that the missing payment finally appeared on a payment history provided to her counsel. Lengyel expanded on this at oral argument. According to Lengyel, because she did not have written documentation to demonstrate that she made the missing payment,[4] she would not have been able to prove her FCEUA claim. And, it was only once the missing payment appeared on the payment history, she argued, was she able to substantiate her claim. Lengyel also suggested at oral argument that as an "unsophisticated consumer," it would be unreasonable to expect her to maintain all records of her financial transactions.

Lengyel's argument does not warrant application of the discovery rule. Indeed, "the limitations period is 'not postponed until the injured party knows every fact necessary to bring [her] action.'" *Brawner v. Educ. Mgmt. Corp.*, No. 11-6131, 2012 WL 3064019, at *13

---

[4] While Lengyel made the missing payment through Western Union, she apparently did not retain a copy or receipt of such payment for her records.

(E.D. Pa. July 27, 2012) (quoting *Danysh v. Eli Lilly and Co.*, 461 F. App'x 75, 77 (3d Cir. 2012)); *see also Brawner v. Educ. Mgmt. Corp.*, 513 F. App'x 148, 151 (3d Cir. 2013) ("knowledge of every fact necessary to prevail on the claim is not required to . . . trigger the accrual period."). Here, Lengyel knew that she made the missing payment and Citi nevertheless denied receipt of same in November 2007. She thus had the necessary knowledge of both her alleged injury and the link between that injury and Citi's conduct to commence this action before she received a payment history reflecting the missing payment in May 2012.

Moreover, Lengyel's lack of written documentation verifying that the missing payment was made does not justify invocation of the discovery rule. For purposes of the discovery rule, the inquiry focuses on whether the knowledge was known or knowable to the plaintiff. Lengyel, as stated, knew she made the missing payment. Thus, although Lengyel lacked documentation of such payment, it did not prevent her from commencing an action against Citi during the limitations period. Lengyel had personal knowledge that the missing payment was made and that she suffered harm as a result of Citi's conduct relating to that payment. Such knowledge was sufficient to institute an action against Citi. Nonetheless, Lengyel slept on her rights, waiting years to file suit against Citi. Application of the discovery rule in this circumstance is not warranted.

Furthermore, Lengygel's "unsophisticated consumer" argument does not render the discovery rule applicable. In particular, Lengyel's status as an "unsophisticated consumer" did not prevent her from maintaining records of her mortgage payments, nor does it alter the crucial fact that Lengyel had actual knowledge that the missing payment was made despite Citi's denial of receipt of same. Accordingly, the statute of limitations on Lengyel's FCEUA claim was not tolled by virtue of the discovery rule.

To the extent that Lengyel attempts to rely on the fraudulent concealment doctrine,

that doctrine also does not render her FCEUA claim timely filed.  The doctrine of fraudulent concealment is recognized under Pennsylvania law.

> The doctrine of fraudulent concealment is an exception to the requirement that a complaining party must file suit within the statutory period. Where, through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations. The defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient[;] mere mistake, misunderstanding or lack of knowledge is insufficient however, and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party.

*Baselice v. Franciscan Friars Assumption BVM Province, Inc.*, 879 A.2d 270, 278 (Pa. Super. Ct. 2005) (internal quotations, citation, and alteration omitted).  "[I]n order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiff justifiably relied." *Kingston Coal Co. v. Felton Min. Co.*, 690 A.2d 284, 291 (Pa. Super. Ct. 1997).  "[T]he fraudulent concealment doctrine does not toll the statute of limitations where the plaintiff knew or should have known of his claim despite the defendant's misrepresentation or omission." *Mest*, 449 F.3d at 516 (citing *Bohus v. Beloff*, 950 F.2d 919, 925-26 (3d Cir. 1991))).  However, while the Third Circuit has indicated that "[a]t the motion to dismiss stage, a plaintiff who seeks to invoke equitable tolling need only 'plead the applicability of the doctrine,'" the Third Circuit also requires a plaintiff to set forth "allegations in [the] complaint that would support application of the fraudulent concealment doctrine. . . ." *Perelman v. Perelman*, 545 F. App'x 142, 151 (3d Cir. 2013) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391 (3d Cir. 1994)).  And, as is the case with the discovery rule, "the fraudulent concealment doctrine does not toll the statute of limitations where the plaintiff knew or should have known of his claim despite the defendant's misrepresentation or omission." *Mest*, 449 F.3d at 516.

The allegations in the Amended Complaint are insufficient to support application of

the doctrine of fraudulent concealment.  Here, Lengyel fails to plead that Citi committed fraud or concealed, intentional or otherwise, receipt of the missing payment thereby causing her to relax her vigilance or deviate from her right of inquiry.  Indeed, the Amended Complaint indicates that Lengyel did not relax her vigilance or deviate from her right of inquiry as she requested on multiple occasions post-petition payment histories.  Moreover, Lengyel does not allege that Citi committed "some affirmative independent act of concealment." *D.D. v. Idant Labs.*, 347 F. App'x 319, 323 (3d Cir. 2010) (citing *Lazarski v. Archdiocese of Phila.*, 926 A.2d 459, 465 (Pa. Super. Ct. 2007)).  Rather, insofar as Lengyel's claim is based on Citi's representations that the missing payment was never made and its corresponding refusal to give her credit for that payment, Lengyel fails to identify an act of concealment by Citi that is independent of her cause of action. *Cf. Robins v. Bimbo Foods Bakeries Distribution, Inc.*, No. 12-5392, 2013 WL 5803783, at *8 (Oct. 28, 2013) ("Fraud claims based on a failure to disclose information that forms the basis for the underlying cause of action do not constitute an independent act of concealment.").  Lastly, as explained above with respect to the discovery rule, Lengyel was aware of her claim that she made the missing payment in November 2007 to Citi despite any representations by Citi to the contrary.  Thus, the doctrine of fraudulent concealment does not render Lengyel's FCEUA claim timely.

Therefore, Lengyel's FCEUA claim against Citi is barred by the statute of limitations, and the discovery rule and the fraudulent concealment doctrine are inapplicable to Lengyel's claim.  As such, the claim will be dismissed.[5]  And, because the FCEUA claim against Citi will be dismissed, there is no basis for an award of attorneys' fees against Citi.  Thus, that claim will also be dismissed.

---

[5] Since the FCEUA claim will be dismissed as untimely, I need not address Citi's arguments that Lengyel fails to state a claim under the FCEUA or the UTPCPL.

**C.    Leave to Amend**

Rule 15 of the Federal Rules of Civil Procedure permits a court to grant a party leave to amend its pleadings. *See* Fed.R.Civ.P. 15(a)(2). "The court should freely give leave when justice so requires." *See id*. "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). Here, as stated, Lengyel's FCEUA claim is barred by the statute of limitations. Accordingly, it would be futile to allow Lengyel the opportunity to amend her pleading. As such, the claims against Citi will be dismissed with prejudice.

### III. Conclusion

For the above stated reasons, Citi's motion to dismiss will be granted.

An appropriate order follows.

May 15, 2014                                                         /s/ A. Richard Caputo
Date                                                                       A. Richard Caputo
                                                                               United States District Judge